UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Lewis E. Wilkerson, Jr.** | ) | **Case No. 20-34576-KLP** |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |
| | ) | |
| ROBERT E. DIXON, | ) | |
| Individually and Derivatively on behalf | ) | |
| of D.E.R. LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Adversary Proceeding |
| | ) | |
| LEWIS E. WILKERSON, JR., Debtor, | ) | No. 21- _____ - KLP |
| | ) | |
| Defendant | ) | |

## **COMPLAINT**

Robert E. Dixon (the "Plaintiff" or "Mr. Dixon") individually and derivatively on behalf of D.E.R. LLC, Virginia limited liability company ID S1258161 (articles of organization now cancelled for failure to pay annual registration fees due the Commonwealth of Virginia), by counsel, under 11 U.S.C. Section 523 and Fed. R. Bankr. P. 4007 and 7001, as his and its complaint against Lewis E. Wilkerson, Jr., Debtor ("the Defendant" or "Mr. Wilkerson") to determine the dischargeability of certain indebtedness and to reduce same to judgment as set forth more particularly hereinafter, respectfully alleges:

W. R. Baldwin, III (VSB #16988)
Meyer Baldwin, Long & Moore, LLP
5600 Grove Avenue
Richmond, VA 23226
Voice: (804) 285-3338
Fax: (804) 285-7779
Co-Counsel for the Plaintiffs
Email (ECF):  billbaldwin@comcast.net
Email (other):  billbaldwin@meyerbaldwin.com

## JURISDICTION

1. This Court exercises subject matter jurisdiction over this cause under 28 U.S.C. §1334 and this adversary proceeding is a "core proceeding" under, *inter alia,* 28 U.S.C. § 157(b)(2)(I).

2. This adversary proceeding is filed within 60 days of the date first set for the meeting of creditors herein.

## PARTIES

3. Mr. Wilkerson is the debtor in Bankruptcy Case No. 20-34576-KLP. As pertains to this adversary proceeding, he, like the Plaintiff Mr. Dixon, was a fifty per cent member of D.E.R. LLC. By judicial admission made in Case No. CL19000231-00, styled Robert E. Dixon v. D.E.R. LLC and Lewis E. Wilkerson, Jr., Circuit Court for Charlotte County, Virginia, Mr. Wilkerson admitted he managed D.E.R. Mr. Wilkerson additionally committed torts with respect to Plaintiff Dixon in his individual capacity for which Mr. Dixon here personally seeks restitution and recompense.

4. Mr. Dixon is a fifty per cent member of DER. He did not serve as a manager or managing member for D.E.R. He appears in this adversary proceeding as the person prosecuting the claims of D.E.R. against Mr. Wilkerson and, proceeding in his own right and not derivatively on behalf of D.E.R. for instances when he was victimized by the tortious conduct of Mr. Wilkerson.

5. D.E.R. LLC was organized June 16, 2004, by Mr. Wilkerson. The business of D.E.R. throughout most of its history was to provide logging transportation services to companies with which Mr. Wilkerson (but not Mr. Dixon) was affiliated. Mr. Dixon's principal work for the company was to direct the trucking operations, subject to the overall direction of Mr. Wilkerson. Mr. Wilkerson controlled all other aspects of the company, including obtaining,

buying and selling equipment, obtaining and disposing of Company assets, setting prices for D.E.R.'s transportation services and controlling all aspects of D.E.R.'s finances, including federal and state taxation. The LLC filed its income returns via Form 1065 and Mr. Wilkerson acted as the Partnership Representative for the LLC under 26 U.S.C. §6223 and previously as tax matters partner.

6. D.E.R. has no written operating agreement. Mr. Wilkerson asserts D.E..R. LLC has an oral operating agreement under which, per Mr. Wilkerson:

> Pursuant to the verbal operating agreement and the course of dealing between the members, Wilkerson was to manage the operations of D.E.R.[1]

Mr. Wilkerson made no other allegations as to the terms of this supposed "verbal operating agreement."

7. Mr. Dixon agrees that Mr. Wilkerson assumed overall management and control over D.E.R. without discussion or formal agreement and held to that authority so long as D.E.R. conducted business. Mr. Dixon denies there was a verbal operating agreement.

## VENUE

8. Venue is laid in this court under 28 U.S.C. § 1409(a).

### VIRGINIA LAW APPLICABLE TO THIS PROCEEDING

### The Law of LLC Derivative Actions

9. Under Virginia law, Va. Code § 13.1-1042, a member of a Virginia limited liability company "shall not commence or maintain a derivative proceeding unless the member fairly and adequately represents the interests of the limited liability company in enforcing the

---

[1] Quotation from paragraph 9 of the Answer and Cross-Complaint of Defendant Lewis E. Wilkerson, Jr. in Case No. CL19000231-00, Circuit Court for Charlotte County, Virginia. There have been no proceedings in this case since Mr. Wilkerson filed the underlying bankruptcy case since the automatic stay prevents further state court proceedings.

3

right of the limited liability company and is a proper plaintiff pursuant to § 13.1-1043." Mr. Dixon meets these requirements because he remains a member of D.E.R. and he was a member at the times of the transactions as to which he here complains.

10. Although Subsection B of § 13.1-1042 by its language requires a written demand and the expiration of a term of 90 day before a derivative suit may be filed, in *Davis v. MKR Development, LLC*, 295 Va. 488, 814 S.E. 2dd 179 (2018), the Virginia Supreme Court held that the "futility exception" to the requirement of a written demand had survived certain recent changes to the Virginia Limited Liability Company Act. Under the "futility exception," a member seeking derivative relief for the LLC was allowed to show, in essence, that a demand on the LLC to pursue the requested relief would likely be futile for various reasons, particularly when the management of the LLC was under the control of "the wrong-doers so that a suit by the [LLC] would be impossible and that a demand to sue would be useless." 295 Va. at 492-493. In a two member limited liability company like D.E.R., an LLC under the complete control and subject to the unchecked abuse of the Debtor, a demand that the Debtor cause the LLC to file suit against the Debtor would be a classically futile act.

11. Accordingly, the traditional requirement of a written demand should be dispensed with in this case to allow the Limited Liability Company, proceeding derivatively by Mr. Dixon, to bring this adversary proceeding to determine the dischargeability of Mr. Wilkerson's liabilities to the LLC.

Relevant Virginia LLC Law respecting
Duties of Managers (and of Members who Manage)

12. A true copy of the Articles of Organization of D.E.R., LLC, made accessible via the Internet by the Virginia State Corporation Commission, is attached as Exhibit A. The document is silent as to management of the LLC.

13. Under Va. Code § 13.1-1024, either the articles of organization or an operating agreement of an LLC "may delegate full or partial responsibility for managing a limited liability company to or among one or more managers." For purposes of this complaint Mr. Dixon submits that it makes no difference whether Mr. Wilkerson conducted himself as a "manager" or as a "member that is participating in the management of the limited liability company," Va. Code §13.1-1024.1. Either way Virginia law imposes the same duties because, under §1024.1.D, "[f]or the purposes of this section only, the term 'manager' shall be deemed to include any member that is participating in the management of the limited liability company." Per § 13.1-1024.1.A:

> A manager shall discharge his or its duties as a manager in accordance with the manager's good faith business judgment of the best interests of the limited liability company.

14. Virginia case law makes clear that managers (and hence members who are participating in the management of the limited liability company) have fiduciary duties to the entity. In *Flippo v. CSC Associates*, 262 Va. 48, 547 S.E. 2d 48, 547 S.E. 2d 216 (2001), the Virginia Supreme Court, noting the very similar language regarding duties managers and corporate directors in the LLC (Chapter 12, Title 13.1) and Corporation (Chapter 9, Title 13.1) Acts, held that a member of the LLC had breached his fiduciary duties to the LLC and the trial court properly had awarded compensatory and punitive damages. In *Remora Investments v. Orr*, 277 Va. 316, 321, 673 S.E.2d 845 (2009), the Virginia Supreme Court decided, 277 Va. 316 at 321:

> "In *Flippo v. CSC Associates III, L.L.C.*, 262 Va. 48, 56-57, 547 S.E.2d 216, 221 (2001) we stated that a manager of an L.L.C. is 'like a corporate director' and analogized the fiduciary duties of managers in an L.L.C. to the fiduciary duties of corporate directors."

5

Facts

Count I

Derivative Claim by D.E.R. Against Mr. Wilkerson
[11 U.S.C. §§ 523(a)(4]
[11 U.S.C. § 523(a)(6)]

15.   The allegations of paragraphs 1-14 are repleaded.

16.   Mr. Wilkerson was uncooperative in the Charlotte County Circuit proceedings in providing financial information regarding D.E.R. and Mr. Wilkerson's 100% owned entity WST Products LLC. Mr. Dixon had been granted a motion to compel the production of requested financial information, but with the filing of the underlying bankruptcy case no order had yet been entered. Mr. Dixon was unable to provide much in the way of personal information as to D.E.R. because Mr. Wilkerson held complete sway over the LLC and because toward the end of 2018 Mr. Wilkerson ordered Mr. Dixon to leave the property used by D.E.R. (which was property controlled by Mr. Wilkerson) and Mr. Dixon did not again return to D.E.R.'s former premises.

17.   During periods before 2017, and continuing in 2017, 2018 and 2019, Mr. Wilkerson acting for both D.E.R. and his wholly owned enterprise WST Products LLC caused the two entities to contract for D.E.R. to provide hauling services for WST.

18.   For 2017, the records made available by Mr. Wilkerson in the Charlotte Circuit Court proceedings for per trip hauling by D.E.R. for WST covered only the period of November 10 through December 22. The Total paid by WST to D.E.R. during this period as identifiable from the records made available was $328,221. Based upon trip tickets and other information, and reviewing the available records of WST and D.E.R., accountants working with Mr. Dixon estimated that for the period observed in 2017 and in 2018 and in 2019, D.E.R. was short changed not less than lost a total of $625,586 operating on a standard rate of $0.13. Extrapolating

in 2017 the 42 days of operating history (generating $328,221) to a full 365 day year yields estimated revenue due to DER for 2017 of some $3 million and a total that should have been paid to D.E.R. in 2017-2019 of $6.47 million, not $3,176,661, meaning Mr. Wilkerson shorted D.E.R. some $3.2 million.

19. Mr. Wilkerson owed D.E.R. a fiduciary duty of making on behalf of D.E.R. fair charges to WST for hauling provided by D.E.R. By causing WST to pay D.E.R. a number $3.2 million less than that which would have been paid to D.E.R. by fair pricing, Mr. Wilkerson breached his fiduciary duty to D.E.R. by causing D.E.R. to subsidize WST by approximately $3.2 million, as a result of which breach D.E.R. lost $3.2 million. As sole owner of WST, Mr. Wilkerson's actions in breach of his fiduciary duty to D.E.R. constituted a fraud against D.E.R. while acting in a fiduciary capacity for D.E.R., a breach of that fiduciary duty and a defalcation while acting in a fiduciary capacity for D.E.R.

20. In 2019 Mr. Wilkerson acting for D.E.R. and while acting in a fiduciary capacity for D.E.R. sold certain equipment owned by D.E.R. (being a truck, trailer and some other related equipment) for the sum of $130,000, the check representing the proceeds of which, although payable to D.E.R., LLC, was wrongfully deposited, not into an account of D.E.R., but instead was wrongfully deposited by Mr. Wilkerson, who then was still acting in a fiduciary capacity for D.E.R., to his personal account at the Bank of Charlotte County at which time Mr. Wilkerson took full use and benefit of these sums for himself. Mr. Wilkerson at this time owed D.E.R. a fiduciary duty not to embezzle its funds and breached that duty.

21. When D.E.R. ceased its business at the end of 2019 the LLC owned some forty timber trailers. Only approximately 15 remain. Mr. Wilkerson disposed of the other 25 trailers for an unknown payments by unknown persons and upon information, because the funds have

not been found in any D.E.R. account, Mr. Wilkerson took the funds of those sales (estimated at a per trailer value of $12,500 for a gross figure of $312,500) for his own use and benefit in breach of his fiduciary duties to D.E.R.

22. As the person managing D.E.R. and controlling its financial affairs, Mr. Wilkerson at all times owed D.E.R. fiduciary duties. As the person managing the company and handling and controlling all of its funds, Mr. Wilkerson's duties included the handling of all trust funds for income and FICA/social security taxes required to be withheld by the LLC from the compensation of its employees and from the LLC's own funds for the employer's share of withholdings for FICA/social security. To that end, Mr. Wilkerson owed not only D.E.R. but also the Internal Revenue Service a fiduciary duty to pay over all trust funds withheld from D.E.R.'s employees and not apply these trust funds to any other purposes.

23. Mr. Wilkerson breached his fiduciary duties to D.E.R. and his trust duties to the IRS, did not pay the trust funds to the IRS as required by law, and as a result thereof in 2019 the Internal Revenue Service filed a total of $201,961.86 in tax liens against D.E.R. as evidenced by notices of federal tax liens filed with the Virginia State Corporation Commission, true copies of which are attached hereto as Exhibit B.

24. Upon information and belief there are other examples of Mr. Wilkerson's breach of his fiduciary duties to D.E.R. which caused D.E.R. to suffer damages, which breaches will be uncovered during the prosecution of this case and will be made of record and for which Mr. Dixon, for the benefit of D.E.R., will seek recompense.

25. The foregoing actions by Mr. Wilkerson in breach of his fiduciary duties to D.E.R. were willful and were taken in reckless and conscious disregard of his duties to D.E.R. and warrant the imposition of punitive damages.

WHEREFORE, premises considered, D.E.R., acting by Robert E. Dixon, demands judgment against Louis E. Wilkerson, Jr.in the following amounts and that all such sums be determined to nondischargeable debts under 11 U.S.C. §§ 523(a)(4) and 11 U.S.C. § 523(a)(6):

    a.    $3.2 million for the conduct described in paragraphs 17-19, such conduct being defalcation while acting in a fiduciary capacity as managing person for D.E.R. LLC, and larceny and embezzlement of D.E.R.'s funds as well as a willful and malicious injury by Mr. Wilkerson to D.E.R.

    b.    $130,000 for the conduct described in paragraph 20, such conduct being defalcation while acting in a fiduciary capacity as managing person for D.E.R. LLC, and larceny and embezzlement of D.E.R.'s funds as well as a willful and malicious injury by Mr. Wilkerson to D.E.R.

    c.    $312,500 for the conduct described in paragraph 21, such conduct being defalcation while acting in a fiduciary capacity as managing person for D.E.R. LLC, and larceny and embezzlement of D.E.R.'s funds as well as a willful and malicious injury by Mr. Wilkerson to D.E.R.

    d.    $201,961.86 for the conduct described in paragraphs 22 and 23, such conduct being defalcation while acting in a fiduciary capacity as managing person for D.E.R. LLC, and larceny and embezzlement of D.E.R.'s funds as well as a willful and malicious injury by Mr. Wilkerson to D.E.R.

    e.    The amount justified by the evidence for any further beaches by Mr. Wilkerson of his duties to D.E.R. discovered during the preparation of this case as noted in paragraph 24.

    f.    In addition to the foregoing, punitive damages in the sum of $300,00.00

9

for a total recovery by D.E.R. acting by Mr. Dixon in the sum of not less than $3,844,461.90, punitive damages of $300,000.00 and reasonable attorney's fees and expenses..

## Count II

### Direct Claims by Mr. Dixon Individually Against Mr. Wilkerson
[11 U.S.C. §§ 523(a)(4)]
[11 U.S.C. § 523(a)(6)]

26. In or about October of 2018 Mr. Dixon owned a certain chisel plow, which Mr. Wilkerson borrowed and never returned despite Mr. Dixon's request. This plow had a value of some $4,000.00.

27. Mr. Wilkerson committed larceny as to such plow; in the alternative he wrongfully and intentionally converted such plow to his own use and deprived Mr. Dixon of same, and Mr. Wilkerson did so willfully, wantonly and in conscious and reckless disregard of Mr. Dixon's rights.

28. In or about October of 2018 Mr. Dixon owned a certain hay rake, which Mr. Wilkerson borrowed and never returned despite Mr. Dixon's request. This hay rake had a value of some $1,500.00.

29. Mr. Wilkerson committed larceny as to such hay rake; in the alternative, he wrongfully and intentionally converted such plow to his own use and deprived Mr. Dixon of same, and Mr. Wilkerson did so willfully, wantonly and in conscious and reckless disregard of Mr. Wilkerson's rights.

30. In or about October 2018, Mr. Dixon owned a certain 2003 GMC pickup truck, which Mr. Wilkerson borrowed and never returned despite Mr. Dixon's request. This GMC pickup truck had a value of some $3,000.00.

31. Mr. Wilkerson committed larceny as to such pick up truck; in the alternative, he wrongfully and intentionally converted such truck to his own use and deprived Mr. Dixon of same, and Mr. Wilkerson did so willfully, wantonly and in conscious and reckless disregard of Mr. Dixon's rights.

32. To the best of Mr. Dixon's recollection D.E.R. had some interest in the GMC pick up truck which also was the subject of Mr. Wilkerson's larceny and wrongful and intentional conversion and to the extent of such ownership by D.E.R., Mr. Dixon prays that he be deemed to be a de facto trustee for D.E.R. empowered to protect and prosecute D. E. R's rights derivatively as to the GMC pick up.

WHEREFORE, premises considered, D.E.R., acting by Robert E. Dixon, demands judgment against Louis E. Wilkerson, Jr. in the following amounts and that all such sums be determined to nondischargeable debts under 11 U.S.C. §§ 523(a)(4) as a larceny and under 11 U.S.C. § 523(a)(6) as a malicious injury by the debtor to the property of another entity;

    a.      $4,000.00 for the chisel plow as described in paragraphs 26 and 27,

    b.      $1.500 for the hay rake as described in paragraphs 28 and 29,

    c.      $3,000 for the 2003 GMC pickup truck as described in paragraphs 30-32, with Mr. Dixon acting as a trustee for the rights of D.E. R. as to such pickup truck,

    d.      In addition to the foregoing, punitive damages in the sum of $1000.00, for a total recovery by D.E.R. acting by Mr. Dixon in the sum of not less than $8,500.00, punitive damages of $1,000 and reasonably attorney's fees and expenses.

And in all events together with such other relief as is proper.

        Respectfully submitted,

        ROBERT E. DIXON, Derivatively for D.E.R., LLC
        ROBERT E. DIXON, INDIVIDUALLY


By:  /s/ W. R. Baldwin, III
      Of Counsel

W. R. Baldwin, III (VSB #16988)
Meyer Baldwin, Long & Moore, LLP
5600 Grove Avenue
Richmond, VA 23226
Voice: (804) 285-3338
Fax: (804) 285-7779
Co-Counsel for the Plaintiffs
Email (ECF):  billbaldwin@comcast.net
Email (other):  billbaldwin@meyerbaldwin.com
Co-Counsel for the Plaintiff, Robert E. Dixon

William F. Seymour, IV (VSB #21763)
FloranceGordonBrown, P.C.
1900 One James Center
901 East Cary Street
Richmond, VA 23 219
Tel: (804) 697-5130
Fax: (804) 697-5159
Email:  wseymour@fgb.com
*Co-Counsel for the Plaintiff, Robert E. Dixon*