UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In Re:  Lewis E. Wilkerson, Jr.,                                    Case No. 20-34576-KLP

Debtor.                                                             Chapter 11

## MOTION TO SELL REAL ESTATE

COMES NOW, the Debtor, Lewis E. Wilkerson, Jr., by counsel, and as and for his Motion to Sell Real Estate pursuant to Bankruptcy Code 363 and Bankruptcy Rules 6003, 6004, and 9014, states as follows:

1. The Debtor filed this case under Chapter 11 of the U.S. Bankruptcy Code on November 17, 2020.

2. Home Loan Investment Bank, FSB holds a first mortgage on the Debtor's property located in Charlotte County, Virginia, and more particularly described as:

> **Tax Map No. 40-A-89D**
> All that certain piece or parcel of real estate, with all improvements thereon and appurtenances thereunto belonging, lying and being in Walton Magisterial District, Charlotte County, Virginia, fronting on State Route 652, containing 2.41 acres, as shown on plat of survey made by William W, Dickerson, Jr., L.S., bearing date of the 24th day of July, 1992, which is recorded in the Clerk's Office, Circuit Court, Charlotte County, Virginia, in Deed Book 265, Page 235. Reference to said plat is hereby made for a more particular description by metes and bounds. Said plat is incorporated herein as if same were herein textually contained.

> **Tax Map No. 40-A-89A**
> All that certain tract or parcel of land situate in the Walton Magisterial District, Charlotte County, Virginia, consisting of 20 acres, more or less, as shown as Tract A on plat by Ralph P. Hines, C.L.S., dated August 28, 1978, revised August 31, 1978, which said plat is recorded in Plat Book No, 4 at Page 75. Reference to said

Robert A. Canfield, VSB #16901
Canfield Wells, LLP
4124 E. Parham Road
Richmond, VA 23228
☎(804)673-6600
🖷(804)673-6604
*Counsel for Debtor*

plat is hereby made for a more particular description by metes and bounds. Said plat is incorporated herein as if same were herein textually contained.

**Tax Map No. 40-A-89**
All that certain tract or parcel of land containing 31 acres, more or less, located in Walton Magisterial District, Charlotte County, Virginia, and more particularly described as Parcel B and D on plat of survey made by Ralph P. Hines, C.L.8., dated August 28, 1978, and revised August 31, 1978, a copy of which survey is duly recorded in the Clerk's Office of the Circuit Court of Charlotte County, Virginia, In Deed Book 184, at Page 80. Reference to said plat is hereby made for a more particular description by metes and bounds. Said plat is incorporated herein as if same were herein textually contained.

LESS and except 3.55 acres conveyed to the Continental Group, Inc. by deed of exchange from Emily G. Clemmer.

**Tax Map No. 40-A-89B**
All that certain lot or parcel of land situated in Walton Magisterial District, Charlotte County, Virginia, containing 1.40 acres and more particularly set forth on a plat of survey made by Ralph P. Hines, C.LS, dated August 28, 1978, and revised August 29,1979, a copy of which is recorded in the Clerk's Office of the Circuit Court of Charlotte County, Virginia, which said plat is recorded in Plat Book No, 4 at Page 75. Said Parcel of land adjoins State Rt. 652, other lands of Continental Forest Industries and the property heretofore owned by Emily G. Clemmer. Reference to said plat is hereby made for a more particular description by metes and bounds. Said plat is incorporated herein as if same were herein textually contained.

BEING A PORTION OF the same real estate conveyed to Lewis E. Wilkerson, Jr., by deed from Prince Edward Investors, LLC, a Virginia limited liability company, dated December 27, 2010, recorded January 3, 2011, Clerk's Office, Circuit Court, Charlotte County, Virginia, In Deed Book 405, Page 631.

3.  The Debtor has entered into a contract (attached as Exhibit A) for the sale of the Property with a sales price of $235,000.00 with brokerage fees in the amount of 8% to be paid which, upon closing of the same, after normal closing costs and any accrued real estate taxes have been paid, the proceeds will be paid to Home Loan Investment Bank's lien in the approximate total amount of $4,245,545.00 and extinguishing Home Loan Investment Bank's

lien against the Property being sold, with Home Loan Investment Bank retaining all of its lien rights against its other collateral.

4. As may be practicable, the Debtor intends to sell its interest in the Property in accordance with the terms of the Contract.

WHEREFORE, the Debtor requests that the Court enter an Order authorizing the sale of the Property in accordance with the terms of the contract.

LEWIS E. WILKERSON, JR.

By: /s/ Robert A. Canfield
*Counsel*

Robert A. Canfield, VSB 16901
Canfield Wells, LLP
4124 E. Parham Road
Richmond, VA 23228
Phone: (804) 673-6600
Facsimile: (804) 673-6604
*Counsel for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion to Sell was sent either electronically or by first class mail, postage pre-paid to all necessary parties on January 10, 2022:

See Attached Creditors List

/s/ Robert A. Canfield
Robert A. Canfield




**Lynchburg Association of REALTORS®**
**Purchase Agreement For Unimproved Property**

(This is a legally binding contract. If you do not understand any part of it, please seek competent advice before signing.)
(Paragraphs marked with an asterisk * require a blank to be filled in or checked.)

*This Purchase Agreement, dated **December 31st**, 20**21**, between **Lewis E. Wilkerson, Jr** ("Seller"), and **Randy D. Dalton** ("Purchaser"), provides that Purchaser and Seller acknowledge that **Berkshire Hathaway HomeServices Dawson Ford Garbee & Co., REALTORS** ("Listing Broker"), represents Seller, and that **Coldwell Banker Prime** ("Selling Broker") ☐ does or ☐ does not represent Purchaser.

* 1. **REAL PROPERTY:** Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and appurtenances thereto belonging, located in the City/County of **Keysville   Charlotte**, Virginia, and described as (legal description): **40-A-89- B, 40-A-89-D, 40-A-89, 40-A-89-A**, Tax Parcel # _____ and more commonly known as: _____ **Eureka Mill Road** _____ **Keysville    VA    23947** together with the items of personal property described in Paragraph 2 (the "Property").

*2. **PERSONAL PROPERTY INCLUDED:** The following items of personal property are included in this sale:

*3. **PURCHASE PRICE:** The purchase price for the Property is **Two Hundred Thirty-Five Thousand** Dollars ($ **235,000.00** ) and shall be determined as follows [select one box]:

☒ This sale shall be in gross, and the stated purchase price shall be the exact sales price. OR

☐ The Purchase price shall be adjusted at settlement to an exact purchase price of $_____ per acre. The exact measurements are to be determined by a survey to be made by a licensed surveyor and paid for by _____.

**PAYMENT SOURCE:** Purchaser shall pay to Seller at settlement the purchase price, subject to the prorations herein and from the following sources [select applicable boxes]:

☐ This sale is <u>not</u> subject to financing. Purchaser shall pay all cash at closing by bank certified funds or bank wire.

☒ This sale is subject to Purchaser being able to obtain [insert loan type] **See attached letter** loan in the principal amount of ____% of the Purchase Price OR $ _____ ("Loan Amount"), secured by a first deed of trust lien on the Property bearing interest at a [select one]:
    ☒ fixed rate not exceeding **3.75**% per year OR
    ☐ at an adjustable rate with an initial rate not to exceed ____% per year and a maximum rate not to exceed ____% during the term of the loan OR
    ☐ at the prevailing rate of interest at the time of settlement.

The loan shall be amortized for a term of ____ years and shall require not more than a total of ____ discount and origination points. Purchaser shall pay the balance of the Purchase Price at settlement, less any deposit, loan amount and/or other credits set forth in this Agreement. Nothing herein prohibits Purchaser from seeking financing other than as specified above (provided settlement is not delayed and there is no cost to Seller), but Purchaser's failure to obtain such alternative financing does not relieve Purchaser from the obligations to obtain the financing specified above.

☐ Seller agrees to pay at settlement (to be reflected on the settlement statement) the sum of $_____ towards Purchaser's closing costs, prepaids, discount points and loan expenses.

LAR 105  01/2020          Page 1 of 7


EXHIBIT A

*4. **APPRAISAL:** This sale [select one]: ☒ is  OR  ☐ is not further subject to the Property's appraised value equaling or exceeding the Purchase Price, which value shall be determined by an appraiser selected by Purchaser's lender (if a cash purchase, the appraiser shall be selected by Purchaser). **The appraisal shall be ordered within twenty (20) days of the Date of Ratification. It shall be the responsibility of Purchaser to advise Purchaser's lender of this requirement.** If the appraisal is not ordered within 20 days of the Date of Ratification, then Seller may terminate this Agreement by written notice to Purchaser and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. If the appraisal is ordered after the 20 day period but Seller has not yet terminated this Agreement, then Seller's right to terminate this Agreement for said purpose is waived.

Regarding the appraisal, if the Purchase Price exceeds the appraised value, Purchaser shall either: (i) proceed with consummation of this Agreement without regard to the amount of the appraised value, or (ii) make a written request to Seller within five (5) days of receipt of the appraisal for a reduction in the Purchase Price so long as the reduced Purchase Price is not lower than the appraised value, and provide Seller a copy of the appraisal (or lender verification of the appraised value). Seller shall then have five (5) days to respond to Purchaser's request for a reduction in the Purchase Price (the "Response Deadline"). If the parties are unable to agree in writing as to a Purchase Price within five (5) days following the Response Deadline, then either Purchaser or Seller may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. For purposes of this paragraph, Purchaser is deemed to have received a copy of the appraisal when Purchaser is notified in writing of the appraised value of the Property. If Purchaser does not request a reduction in the Purchase Price within five (5) days after receipt of the appraisal, then this condition shall be deemed waived by Purchaser.

*5. **FINANCING:** If this Agreement is conditioned upon Purchaser obtaining financing, Purchaser shall make written application for such loan within seven (7) days after the Date of Ratification (as defined in Paragraph 22) and shall make diligent effort to secure a written loan commitment no later than 5:00 p.m. on [select one box]: ☐ the settlement date set forth in Paragraph 8 OR ☐ _____, 20___. If, at the time of such loan application, Purchaser chooses not to lock-in the rate and/or points that meet or exceed the requirements set forth in Paragraph 3, Purchaser waives such rate and point contingency. If this Agreement is not conditioned upon Purchaser obtaining financing, Purchaser shall provide Seller with written verification from a third-party in possession of Purchaser's assets within seven (7) days after the Date of Ratification that Purchaser has sufficient assets to pay the balance of the Purchase Price at settlement. If Purchaser fails to comply with any of the provisions of this paragraph or fails to obtain a written loan commitment by 5:00 p.m. on the date set forth above, then Seller may terminate this Agreement by written notice to Purchaser, and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder. As used in this paragraph, "diligent effort" shall mean that Purchaser has provided all information or documentation requested by a lender within seven days of each such request and paid all costs associated with such loan application, including but not limited to, application fees, credit reports and appraisal(s). Purchaser authorizes the lender to: (i) disclose to the Listing Broker and Selling Broker information about the progress of Purchaser's loan application and approval, including whether Purchaser has complied with the lender's requests and paid all costs associated with such application; and (ii) furnish a copy of Purchaser's loan estimate(s0 and closing disclosure(s) to the Selling Broker. If, after diligent effort, Purchaser is unable to obtain financing, then this Agreement shall terminate, and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

6. **WIRE FRAUD ALERT:** Criminals are hacking email accounts of real estate agents, settlement attorneys/agents and others resulting in fraudulent wire instructions being sent to divert Seller or Purchaser's funds to the criminal's account. These emails look legitimate, but they are not. *Purchaser and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the bank routing number and account number. Seller and Purchaser hereby release and indemnify Listing Broker and Selling Broker, their agents and employees, from any liability which may result from the loss of funds due to criminal hacking of email accounts or wire instructions.*

*7. **DEPOSIT:** Purchaser shall make a deposit of $__2,500.00__ to be held by __Title Alliance of Midlothian__ (the "Escrow Agent") in the form of: ☒ check ☐ cash ☐ other _____ (the "Deposit"). Purchaser [select one]: ☐ has paid the Deposit to the Escrow Agent OR ☒ will pay the Deposit to the Escrow Agent within __5__ days (the "Extended Deposit Date") after the Date of Ratification. If Purchaser fails to pay the Deposit as set forth herein, then Purchaser shall be in breach of this Agreement. At Seller's option and in lieu of all other remedies set forth in this Agreement, Seller may terminate this Agreement by written notice to Purchaser and neither party shall have any further obligation hereunder. If the Escrow Agent is a Virginia Real Estate Board ("VREB") licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account by the end of the fifth business banking day

LAR 105 01/2020                    Page 2 of 7

following the latter of: (i) ratification and delivery of this Agreement as defined in Paragraph 22, or (ii) the Extended Deposit Date. If the Escrow Agent is not a VREB licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account in conformance with applicable Federal or Virginia law and regulations. The Deposit may be held in an interest bearing account and the parties waive any claim to interest resulting from such Deposit. The Deposit shall not be released by the Escrow Agent until (i) credited toward the purchase price at settlement; (ii) Seller and Purchaser agree in writing as to its disposition, (iii) a court of competent jurisdiction orders a disbursement of the funds, or (iv) disbursed in such manner as authorized by the terms of this Agreement, subject to Virginia law and/or VREB Regulations. Seller and Purchaser agree that Escrow Agent shall have no liability to any party for disbursing the Deposit in accordance with this paragraph, except in the event of Escrow Agent's negligence or willful misconduct.

If the Property is foreclosed upon while this Agreement is pending, the terms of Virginia Code Section 54.1-2108.1 shall apply to the disbursement of the Deposit. The foreclosure shall be deemed a termination of this Agreement by Seller and, absent any default by Purchaser, the Deposit shall be disbursed to Purchaser.

*8. **SETTLEMENT; POSSESSION:** Settlement shall be made at the offices of __Title Alliance of Midlothian__ on or before [select **one** box and insert closing date]:

☒ __February__ __16th__, 20__22__, or a reasonable time thereafter if the Purchaser or Seller is making diligent effort to satisfy any contingencies contained in this Agreement.
**OR**

☐ _____, 20____, if settlement does not occur within ten (10) days following such date (but subject to Seller's right to cure any title defects as set forth in Paragraph 19.B., a party who is ready, willing and able to close under the terms of this Agreement may terminate this Agreement by written notice to the other party, and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder.

**Possession of the Property shall be given at settlement, unless otherwise agreed in writing by the parties.** Failure to check one box above shall not invalidate this Agreement. The settlement date shall be as inserted above. Seller and Purchaser authorize and direct the settlement agent to provide a copy of Purchaser's closing disclosure (if Purchaser obtains lender financing), settlement statement and/or disbursement summary for this transaction to the Seller, Purchaser, Listing Broker and Selling Broker.

9. **BROKERAGE FEE:** Seller and Purchaser authorize and direct the settlement agent to disburse to the Listing Broker and the Selling Broker from settlement proceeds their respective brokerage fees payable as a result of the sale and settlement set forth under this Agreement. Prior to settlement, each of the Listing Broker and/or the Selling Broker shall deliver to the settlement agent a signed written statement setting forth the disbursement instructions for payment of any brokerage fees and any sales incentives payable to each broker.

*10. **STUDY PERIOD:** Purchaser shall have __N/A__ days from the Date of Ratification to determine whether Purchaser's use or plan of development for the Property is practical. If, prior to the expiration of the study period, Purchaser determines that Purchaser's proposed use or plan of development for the Property is not practical, then Purchaser may terminate this Agreement by written notice to Seller and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder, except as provided herein. Time shall be of the essence for this paragraph.

*11. **SOIL STUDY:** This Agreement is contingent for ____ days from the Date of Ratification to allow _____ at its expense to obtain a soil study and/or percolation test, which shall lawfully allow for the erection and use of _____
_____ on the Property. Such study or test shall be pursued diligently and in good faith and if such study or test reveals that Purchaser's intended use of the Property is not permissible or practicable, Purchaser may terminate this Agreement by written notice to Seller and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser, and neither party shall have any further obligation hereunder, except as provided herein.

12. **ACCESS:** Purchaser and Purchaser's representatives and engineers shall have the right to enter onto the Property at all reasonable times prior to settlement for purposes of engineering, surveying, title or such other work as is permitted under this Agreement, so long as such studies do not result in a permanent change in the character or topography of the Property. Purchaser shall not interfere with Seller's use of the Property, and Purchaser, at Purchaser's expense, shall promptly restore the Property to its prior condition upon completion of Purchaser's studies or work. Purchaser shall keep the Property free and clear from all liens resulting from its work, studies, investigations or other activities performed pursuant to this Agreement and shall indemnify and hold Seller harmless against any loss

LAR 105 01/2020                              Page 3 of 7

or liability to person or property resulting from Purchaser's presence or activities on the Property. This obligation shall survive settlement and transfer of title and possession to the Property.

**\*13. PROPERTY OWNERS' ASSOCIATION DISCLOSURE:** The Seller represents that the Property [select one]: ☐ is OR ☒ is not located within a development which is subject to the Virginia Property Owners' Association Act (Sections 55.1-1800 et. seq. of the Code of Virginia) (the "Act"). If the Property is within such a development, the Act requires the Seller to obtain from the property owners' association an association disclosure packet and provide it to the Purchaser, or Purchaser's authorized agent. The information contained in the association disclosure packet shall be current as of the specified date on the disclosure packet. The Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that the Purchaser signs this Agreement, the Purchaser receives the association disclosure packet or is notified that the association disclosure packet is not available; (b) within 3 days after receiving the association disclosure packet, if the association disclosure packet or notice that the association disclosure packet will not be available is hand delivered, delivered by electronic means or delivered by a commercial overnight delivery service or the United Parcel Service, and a receipt obtained; or (c) within 6 days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to the Purchaser by United States mail. The Purchaser may also cancel this Agreement at any time prior to settlement if the Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to the Purchaser. Notice of cancellation shall be provided to the Seller (owner) or his agent by one of the following methods: (i) hand delivery; (ii) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (iii) electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (iv) overnight delivery using a commercial service or the United States Postal Service. In the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the Seller shall cause any deposit to be returned promptly to the Purchaser, but not later than thirty days from the date of cancellation. Seller shall provide written instructions to the Association for delivery of the disclosure packet to Purchaser or Purchaser's authorized agent. The right to receive the association disclosure packet and to cancel this Agreement terminates at settlement. If the Purchaser has received the association disclosure packet, the Purchaser has a right, at Purchaser's sole expense, to request an update of such disclosure packet from the property owners' association in accordance with subsection G of Section 55.1-1810 or subsection D of Section 55.1-1811 as appropriate. A request for an updated disclosure packet does not extend the cancellation periods set forth above.

**14. MECHANIC'S LIEN DISCLOSURE:** Virginia law (§43-1 et seq.) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, within 90 days from the last day of the month in which the lien or last performed work or furnished materials or 90 days from the time the construction, removal, repair or improvement is terminated. **AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.** Seller shall deliver to Purchaser at settlement an affidavit in a form acceptable to Purchaser's title company, signed by Seller, that no labor or materials have been furnished to the Property within the statutory period for the filing of mechanics' or materialmens' liens against the Property. If labor or materials have been furnished to the Property during the statutory period, Seller shall deliver to Purchaser an affidavit signed by Seller and the person(s) furnishing the labor and/or materials that such items have been paid.

**15. DEFAULT:** If either Seller or Purchaser defaults under this Agreement, the defaulting party, in addition to all other remedies available at law or in equity, shall be liable for the brokerage fees set forth in Paragraph 9 and any brokerage fees set forth in Seller's Listing Agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's Listing Agreement had been performed, and for any damages and all expenses incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction and the enforcement of this Agreement and Seller's Listing Agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement, shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's Listing Agreement, or for any damages and expenses, including attorney's fees and court costs, incurred by the non-defaulting party, the Listing Broker and the Selling Broker in connection with this transaction.

**\*16. RELATED BUSINESS AND SERVICES; BROKER DISCLOSURES:** The Listing Broker and Selling Broker may engage in mortgage loan, homeowner's and title insurance, real estate settlement, home warranty and other real estate related businesses and services from which they receive compensation during the course of this transaction, in

addition to the real estate brokerage fees. ☒ Listing Broker OR ☐ Selling Broker make the following additional disclosure(s):
BRHSDFG has relationship with Movement Mortgage

**17. PURCHASER DISCLOSURE:** Purchaser warrants he/she does not own any real or personal property that must be sold and settled prior to the settlement of this Agreement, except as disclosed in this Agreement.

**\*18. ADDITIONAL TERMS:**


**19. STANDARD PROVISIONS:**

**A. EXPENSE PRORATIONS:** Seller agrees to pay the expense of preparing the deed and the applicable grantors tax, release fees, and any other fees applicable to the grantor by custom. Except as otherwise agreed herein, Purchaser shall pay all expenses incurred by Purchaser in connection with this Agreement, including without limitation, title examination fees, title insurance premiums, survey costs, recording costs and Purchaser's attorney's fees. All taxes, assessments, interest, rent escrow deposits and other ownership fees, if any, shall be prorated as of the date of settlement. In addition to the Purchase Price, Purchaser agrees to pay Seller for all fuel oil and propane/LP gas remaining in any tanks (if applicable) at the prevailing market price as of the date of settlement.

**B. TITLE:** At settlement Seller shall convey the Property to Purchaser by a general warranty deed containing English covenants of title, free of all encumbrances, tenancies, and liens (for taxes or otherwise), but subject to such restrictive covenants and utility easements of record which do not materially and adversely affect Purchaser's proposed use of the Property or render the title unmarketable. If the Property does not abut a public road, title to the Property must include a recorded easement providing adequate access thereto satisfactory to Purchaser. In the event this sale is subject to a financing contingency under Paragraph 3, the access to a public road must also be satisfactory to the lender. If the examination reveals a title defect that can be remedied by legal action or otherwise within a reasonable time, Seller, at his/her expense, shall promptly take such action as is necessary to cure such defect. If the defect is not cured within thirty (30) days after Seller receives notice of the defect or if seller is unable to provide access to a public road as provided above, then either party may terminate this Agreement (at the expiration of the thirty (30) day period if termination relates to title defect(s) not being cured) by written notice to the other party. Upon termination of this Agreement, and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder. The parties agree that the settlement date prescribed in Paragraph 8 shall be extended if necessary to enable Seller to cure any title defect, but not for more than thirty (30) days, time being of the essence.

**C. LAND USE ASSESSMENT:** In the event the Property is taxed under land use assessment and this sale results in disqualification from land use eligibility, Seller shall pay any rollback taxes assessed. If the Property continues to be eligible for land use assessment, Purchaser agrees to make application at Purchaser's expense for continuation under land use, and to pay any rollback taxes resulting from failure to file or to qualify. Notwithstanding anything herein to the contrary, the provisions of this Paragraph C shall survive settlement and the delivery of the deed.

**D. RISK OF LOSS:** All risk of loss or damage to the Property by fire, windstorm, casualty, or other cause is assumed by Seller until settlement. In the event of substantial loss or damage to the Property before settlement, Purchaser shall have the option of either (i) terminating this Agreement, and subject to the provisions of Paragraph 7, Purchaser's Deposit shall be refunded in full to Purchaser and neither party shall have any further obligation hereunder, or (ii) affirming this Agreement, in which event Seller shall assign to Purchaser all of Seller's rights under any policy or policies of insurance applicable to the Property.

**E. VA/FHA LOANS:** If a VA or FHA loan is selected in Paragraph 3, it is expressly agreed that notwithstanding any other provisions of this Agreement, the Purchaser shall not be obligated to complete the purchase of the Property

LAR 105 01/2020                                             Page 5 of 7

described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the Purchaser has been given in accordance with HUD/FHA or VA requirements a written statement by the Federal Housing Commissioner, Veterans Administration, or a direct endorsement lender setting forth the appraised value of the Property of not less than the Purchase Price. The Purchaser shall have the privilege and option of proceeding with consummation of this Agreement without regard to the amount of the appraised value. The appraised value is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Purchaser should satisfy himself/herself that the price and condition of the Property are acceptable.

F. **MISCELLANEOUS**: This Agreement represents the entire agreement between Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties. This Agreement shall be construed according to the laws of the Commonwealth of Virginia and shall be binding upon and shall inure to the benefit of the heirs, personal representatives, successors, and assigns of the parties. To the extent any handwritten or typewritten terms herein conflict with, or are inconsistent with the pre-printed terms hereof, the handwritten or typewritten terms shall control. This Agreement may only be assigned by Purchaser with the written consent of the Seller. If the Seller agrees in writing to an assignment of this Agreement, Purchaser shall remain obligated hereunder until settlement. The parties agree that faxed or electronic transmission of any signed original document shall have the same effect as an original. As used in this Agreement, a "day" shall mean a calendar day and all times are local Eastern Standard Time unless otherwise noted. This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. No party will refuse delivery of any notice from the other party in order to hinder or delay any deadline established in this Agreement. Unless otherwise provided herein, the provisions of this agreement affecting title shall be deemed merged into the deed delivered at settlement and shall not survive settlement.

**20. SELLER REPRESENTATION**: Seller warrants that the person(s) signing this Agreement as "Seller" include(s) every person who possesses an ownership interest in the Property or who will be a necessary party to convey clear title to the Property.

**\*21. ELECTRONIC SIGNATURES** In accordance with the Uniform Electronic Transactions Act (UETA) regarding electronic signatures and transactions, the parties do hereby expressly authorize and agree to the use of electronic signatures (such as Authentisign) as an additional method of signing and/or initialing this Agreement.

**\*22. ACCEPTANCE**: This Agreement becomes a legally binding agreement only upon ratification and delivery. Unless ratification and delivery of this Agreement occurs by __5:00__ ☐ a.m. or ☒ p.m. on __Dec    31__, 20__21__, this offer shall expire and shall not be binding on either party. If the parties desire to accept an offer that has expired, then (i) the date set forth in this paragraph 22 must be revised to the ratification date (or later), (ii) each party must initial such revision, and (iii) ratification and delivery must occur prior to the revised expiration date.

As used herein, **"ratification and delivery"** means delivery of a final accepted and signed Agreement to the other party or their respective broker or salesperson by hand delivery, fax or electronic transmission, or by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested. In the event of a dispute, the sender shall have the burden to demonstrate delivery to the recipient of the final accepted and signed Agreement. "Date of Ratification" means the date upon which ratification and delivery occurs. Purchaser and Seller understand that they shall have the right to withdraw any offer at any time prior to ratification and delivery. If either party withdraws an offer, notice shall be deemed effective upon receipt. If any offer is withdrawn, all deposits shall be returned to the Purchaser at no penalty.

[Signatures appear on next page.]

WITNESS the following authorized signatures:

Purchaser _____Randy D. Dalton_____ Date _____    Seller _____Lewis E. Wilkerson, Jr_____ Date __12/31/21__

Purchaser _____ Date _____    Seller _____ Date _____

Purchaser _____ Date _____    Seller _____ Date _____

## The following is for information purposes only:

**Selling Broker Company's Name and Address**
Coldwell Banker Prime
15871 City View Drive, Set 204,
Midlothian    VA    23113

Office Phone    804-277-4136
Office Fax
DPOR Firm License No.:    226027515

Purchaser's Authorized Agent's Information:
Name    Cornell Callaham
Email    cornellcallaham@gmail.com
Cell No.    434-252-9881
Agent's DPOR License No.:    0225229974

**Listing Company's Name and address**
Berkshire Hathaway HomeServices Dawson Ford Garbee & Co., REALTORS
3715 Old Forest Road
Lynchburg    VA    24501

Office Phone    434-385-0015
Office Fax    434-385-8758
DPOR Firm License No.:    0226008540

Seller's Authorized Agent's Information:
Name    Arline M Ore
Email    arline.ore@bhhsdfg.com
Cell No.    434-660-3010
Agent's DPOR License No.:    0225065399

COPYRIGHT ©2020 by the Central Virginia Regional MLS, LLC (CVRMLS). All rights reserved. This form is licensed to the Lynchburg Association of REALTORS® (LAR) by CVRMLS and may be used only by members in good standing of LAR. The reproduction of this form, in whole or in part, or the use of the name "Central Virginia Regional MLS" or the "Lynchburg Association of REALTORS®", in connection with any other form, is prohibited without prior written consent of such entities.

LAR 105  01/2020    Page 7 of 7

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In Re: Lewis E. Wilkerson, Jr.,            Case No. 20-34576-KLP
         Debtor.                           Chapter 11

Address: PO Box 270
          Keysville, VA 23947

SSN / EIN: xxx-xx-5631

## NOTICE OF HEARING

Lewis E. Wilkerson, Jr. has filed papers with the Court for permission to sell real estate.

**<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant the relief requested in the objection, or if you want the Court to consider your views on the objection, then on or before **January 31, 2022**, you or your attorney must:

■ File with the Court, at the address shown below, a written request for a hearing [or a written response pursuant to Local Bankruptcy Rule 9013-1(h)]. If you mail your request for hearing (or response) to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

         Clerk of the Court
         United States Bankruptcy Court
         Eastern District of Virginia, Richmond Division
         701 E. Broad Street
         Richmond, VA 23219

You must also mail a copy to:

         Robert A. Canfield, Esquire
         4124 E. Parham Road
         Richmond, VA 23228

■ Attend the hearing scheduled on **February 2, 2022 at 10:00 a.m.** in the United States Bankruptcy Court, 701 East Broad Street, Room 5100, Richmond, Virginia in front of Bankruptcy Judge Keith L. Phillips. All proceedings before Judge Phillips will be

conducted by video conference via Zoom for Government in accordance with General Order 20-5. Any participant wishing to appear via Zoom for Government must pre-register. Attorneys seeking to participate must be admitted to the Court or admitted pro hac vice. (See Local Bankruptcy Rule 2090-1, which is accessible on the Court's Local Rules internet web site page.)

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the objection and may enter an order granting the request of Lewis E. Wilkerson, Jr.

Dated: January 10, 2022

/s/ Robert A. Canfield
Robert A. Canfield

Robert A. Canfield, VSB 16901
Canfield Wells, LLP
4124 E. Parham Road
Richmond, VA 23228
Phone: (804) 673-6600
Facsimile: (804) 673-6604
*Counsel for Lewis E. Wilkerson, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Notice was sent either electronically or by first class mail, postage pre-paid to all necessary parties on January 10, 2022:

See Attached Creditors List

/s/ Robert A. Canfield
Robert A. Canfield

Ally Financial
P.O. Box 380902
Minneapolis, MN 55438

American Express
PO Box 650448
Dallas, TX 75265

American Express
c/o Becket & Lee, LLP
PO Box 3001
Malvern, PA 19355-0701

Apple Advance Corp
c/o Jonathan A. Berkowitz, Esq.
712 US Hwy 1, #400
North Palm Beach, FL 33408

Apple Advance Corp
c/o Alan D. Eisler
Eisler Hamilton, LLC
1 Research Court, Suite 450
Rockville, MD 20850

Arc3 Gases
PO Box 26269
Richmond, VA 23260

ARM Solutions, Inc
PO Box 2929
Camarillo, CA 93011

Bank of America
PO Box 982238
El Paso, TX 79998

Bank of Charlotte County
PO Box 336
Phenix, VA 23959

Bank of Charlotte County
PO Box 2711
Omaha, NE 68103-2711

Bank of the West
PO Box 2078
Omaha, NE 68103-2078

Bank of the West
2527 Camino Ramon
San Ramon, CA 94583-4213

Barclay's Juniper MC
PO Box 13337
Philadelphia, PA 19101-0000

BMO Transportation Finance
BMO Harris Bank NA
PO Box 71951
Chicago, IL 60694-1951

BMO Harris Bank
PO Box 3040
Cedar Rapids, IA 5206-3040

Can Capital, Inc.
WebBank c/o Can Capital
2015 Vaughan Rd, NW, Bldg 500
Kennesaw, GA 30144

Capital One
PO Box 71083
Charlotte, NC 28272

Capital One Bank/American InfoS
4515 N. Santa Fe Ave
Oklahoma City, OK 73118-7901

Carter Machinery Co, Inc.
PO Box 751053
Charlotte, NC 28275-1053

Carter Machinery Co.
c/o Crenshaw, Ware & Martin
150 W. Main St, #1500
Norfolk, VA 23510-3403

CAT Commercial Revolving Card
Dept. 33-8025507039
PO Box 78004
Phoenix, AZ 85062

Caterpillar Financial SvcsCorp
2120 West End Ave.
Nashville, TN 37203

Charlotte County Treasurer
P.O. Box 267
Charlotte Court House, VA 23923

CFS Group
PO Box 580203
Charlotte, NC 28258-0203

Citizens Bank N.A.
One Citizens Bank Way
JCA115
Johnston, Rhode Island 02919

Citizens Bank NA
PO Box 255587
Sacramento, CA 95865

Citizens Bank NA
c/o Carl Eason, Esq.
Wolcott Rivers Gates
200 Bendix Rd, Ste 300
Virginia Beach, VA 23452

Colony Tire Corp #33
2900 Deepwater Terminal
Richmond, VA 23234

Cumberland State Forest
State Forester of Va
751 Oak Hill Road
Cumberland, VA 23040

Daimler Truck Financial
14372 Heritage Parkway
Fort Worth, TX 76177

David J. & Pat Smith
56 Wexford Club Drive
Hilton Head Island, SC 29928

Dawn H. Wilkerson
390 Maple Road
Keysville, VA 23947

De Lage Landen Financial Svcs
PO Box 41602
Philadelphia, PA 19101

De Lage Landen Financial
Attn: Litigation & Recovery
1111 Old Eagle School Rd
Wayne, PA 19087-1453

Essex Bank
9954 Mayland Drive, Ste 2100
Henrico, VA 23233

Essex Bank
c/o Kutak Rock
Michael A. Condyles
901 E. Byrd St, #1000
Richmond, VA 23219-4071

Everest Business Funding
8200 NW 52nd Terrace, 2nd Fl.
Doral, FL 33166

Farmers Bank of Appomattox
PO Box 216
Appomattox, VA 24522

Flaminia Investments, LLC
2610 Business Drive
Cumming, GA 30028

Flaminia Investments, LLC
c/o Smart, Day, & Gilman
1047 Vista Park Dr, Ste D
Forest, VA 24551

FNB Equipment
1853 Highway 315
Pittston, PA 18640

Forethought Life Insurance
c/o Mary F. Balthasar Lake
LOGS LEGAL GROUP LLC
10021 Balls Ford Road, Ste. 200
Manassas, Virginia 20109

Forethought Life Insurance
c/o Select Portfolio Svc
PO Box 65250
Salt Lake City, UT 84165-0250

Fred C. & Jane E. Howell
104 Clopton Court
Lynchburg, VA 24503

Americredit Financial dba
GM Financial
PO Box 183853
Arlington, TX 76096

Hancock Natural Resource Group
197 Clarendon St C-08-99
Boston, MA 02116

Home Loan Investment Bank
1 Home Loan Plaza
Warwick, RI 02886

Home Loan Investment Bank, FSB
c/o Samuel I. White, PC
596 Lynnhaven Parkway, Ste 200
Virginia Beach, VA 23452

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

IPFS Corporation
PO Box 412086
Kansas City, MO 64141

Knight Capital Funding
9 E. Loockerman St, #202-543
Dover, DE 19901

Mercedes Benz Financial
c/o BK Servicing, LLC
PO Box 131265
Roseville, MN 55113-0011

Paccar Financial
PO Box 1518
Bellevue, WA 98009-1518

Parker Fuel Freedom
PO Box 142
South Hill, VA 23970

Parker Oil & Propane
617 S. Main St
Chase City, VA 23924

Parker Oil & Propane
2000 W. Third St
Farmville, VA 23901

Robert E. Dixon
c/o FlorenceGordanBrown, P.C.
901 East Cary Street
Richmond, VA 23219

Robert E. Dixon
c/o W.R. Baldwin, III
5600 Grove Ave
Richmond, VA 23226-2102

Robert M. Anderson
Carolyn Kincaid-Anderson
4103 Forest Circle
Richmond, VA 23225

SelectPortfolio Servicing, Inc
PO Box 65450
Salt Lake City, UT 84165

SonaBank
P.O. Box 2075
Ashland, VA 23005

Spartan Capital Funding, LLC
Thomson Ollunga, LLP
845 Third Ave, 6th Floor
New York, NY 10022

Spartan Capital Funding, LLC
104 E. 25th St, 10th Floor
New York, NY 10010

SwiftFinancial,LLC/Loanbuilder
a PayPal service
3505 Silverside Road
Wilmington, DE 19810

The Carrington Co., LLC
203 Archway Court
Lynchburg, VA 24502

Timbervest Partners III VA
c/o Thompson McMullan, P.C.
100 Shockoe Slip. Third Floor
Richmond, VA 23219

Truck Enterprises, Inc.
3440 S. Main Street
Harrisonburg, VA 22801

Union Funding Source
c/o Maurice Wutscher LLP
23611 Chagrin Blvd. Suite 207
Beachwood, OH 44122-5540

Unique Funding Solutions
71 S. Central Avenue
Valley Stream, NY 11580

Universal Platinum Fleet Progr
PO Box 1239
Covington, LA 70434

Verizon
PO Box 16801
Newark, NJ 07101

Verizon Connect Fleetmatics
1 Verizon Way
Basking Ridge, NJ 07920-1097

Wells Fargo
PO Box 77053
Minneapolis, MN 55480

Wells Fargo Bank/Card Svcs
PO Box 10438, MAC F8235-02F
Des Moines, IA 50306-0438

Wells Fargo Bank, N.A.
MAC N9286-01Y
P.O. Box 1629
Minneapolis, MN 55440-97